FILED

2005 Nov-09  PM 03:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| PATRICIA R. HELD, | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | **2:04-cv-2427-JHH** |
| SITEL CORPORATION, | ) | |
| DEFENDANT. | ) | |

## MEMORANDUM OF DECISION

The court has before it the July 28, 2005 motion (doc. # 16) of defendant Sitel Corporation for summary judgment.  Pursuant to the court's August 2, 2005 order, the motion was deemed submitted, without oral argument, on September 6, 2005.

### I. Procedural History

Plaintiff Patricia R. Held commenced this action on August 6, 2004 by filing a complaint in this court alleging discrimination and retaliation because of disability, in violation of 42 U.S.C. §§ 12101 et seq.  Plaintiff contends that defendant's alleged conduct constitutes the following: (1) discrimination,

(2) harassment,[1] and (3) retaliation.[2]  Defendant's July 28, 2005 motion for

summary judgment asserts that plaintiff has failed to establish a prima face case

for any of plaintiff's claims.  In the alternative, defendant contends that it

terminated plaintiff for a legitimate, nondiscriminatory reason.

Both parties have filed briefs and submitted evidence in support of their

respective positions.  Defendant submitted a brief (doc. #17) and evidence[3] (doc.

#18) in support of its own motion for summary judgment on July 28, 2005.  On

August 30, 2005, plaintiff filed a brief (doc. #20) and evidence[4] (doc. #21) in

---

[1]  Although not pled as a specific count in her complaint, plaintiff's complaint alleges
that "a hostile work environment had begun to form, based on her disability." (Complaint ¶ 21.)
Defendant addressed this claim in its motion for summary judgment and brief in support of that
motion.  Plaintiff did not address this claim in her brief in opposition to the motion for summary
judgment.  Plaintiff, therefore, has waived this claim.  See Rowe v. Schreiber, 139 F.3d 1381,
1382 n. 1 (11th Cir.1998).  Summary judgment is due to be granted for defendant as to plaintiff's
claim for a hostile work environment.

[2]  In her brief in opposition to the motion for summary judgment, plaintiff concedes that
summary judgment is due to be granted on her retaliation claim.  (Pl. Br. at 16 n.2).  As such, the
court will not discuss the facts or legal argument related to this claim.  Summary judgment is due
to be granted for defendant as to plaintiff's retaliation claim.

[3]  The defendant submitted the following evidence: excerpts of plaintiff's deposition and
exhibits; complaint; defendant's first set of interrogatories to plaintiff; plaintiff's answers to
defendant's first set of interrogatories; affidavit of Christopher Muro and exhibits; and affidavit
of Christopher E. Hoyme.

[4]  The plaintiff submitted the following evidence: plaintiff's deposition; EEOC charge of
discrimination; plaintiff's answers to defendant's interrogatories; 01/21/03 disciplinary action
form; 02/04/03 disciplinary action form; 02/18/03 disciplinary action form; 03/18/03 disciplinary
action form; 10/16/01 letter from Dr. Joseph M. Sherrill; and 03/21/03 letter from Dr. John B.
Riser.

opposition to defendant's motion for summary judgment.  On September 6, 2005,

defendant filed a brief (doc. #23) and evidence[5] (doc. #24) in reply to plaintiff's

opposition.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper

"if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229

F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always

bears the initial responsibility of informing the court of the basis for its motion and

identifying those portions of the pleadings or filings which it believes demonstrate

the absence of a genuine issue of material fact.  See id. at 323.  Once the moving

party has met its burden, Rule 56(e) requires the nonmoving party to go beyond

the pleadings and by its own affidavits, or by the depositions, answers to

interrogatories, and admissions on file, designate specific facts showing that there

is a genuine issue for trial.  See id. at 324.

---

[5] The defendant submitted the following evidence in reply: second affidavit of
Christopher Muro; and affidavit of Christopher E. Hoyme.

3

The substantive law will identify which facts are material and which are irrelevant.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  See id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  See Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy

4

its initial burden on summary judgment in either of two ways.  First, the moving

party may produce affirmative evidence negating a material fact, thus

demonstrating that the non-moving party will be unable to prove its case at trial.

Once the moving party satisfies its burden using this method, the non-moving

party must respond with positive evidence sufficient to resist a motion for directed

verdict at trial.

The second method by which the moving party who does not bear the

burden of proof at trial can satisfy its initial burden on summary judgment is to

affirmatively show the absence of evidence in the record to support a judgment for

the non-moving party on the issue in question.  This method requires more than a

simple statement that the non-moving party cannot meet its burden at trial but does

not require evidence negating the non-movant's claim; it simply requires the

movant to point out to the district court that there is an absence of evidence to

support the non-moving party's case.  See Fitzpatrick, 2 F.3d at 1115-16.  If the

movant meets its initial burden by using this second method, the non-moving party

may either point out to the court record evidence, overlooked or ignored by the

movant, sufficient to withstand a directed verdict, or the non-moving party may

come forward with additional evidence sufficient to withstand a directed verdict

motion at trial based on the alleged evidentiary deficiency.  However, when

5

responding, the non-movant can no longer rest on mere allegations, but must set

forth evidence of specific facts.  See Lewis v. Casey, 518 U.S. 343, 358 (1996)

(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts[6]

In late November 1996, Held went to the emergency room because she was

vomiting blood.  (Held Dep. at 21.)  After multiple procedures, she was diagnosed

with a "spinal cord injury of the T-6 level, which causes . . . leg spasms, irritable

bowel syndrome, and . . . loss of control in the bowel at times."  (Id. at 20.)  She

also has "neurogenetic bladder, which also can cause [her] to loose control of the

bladder."  (Id.)

Held began her employment with Sitel[7] on September 5, 2001 as a Customer

Service Professional (CSP) on the night shift.  (Held Dep. at 49; 61-62.)  The

essential job duties of the CSP position include answering incoming telephone

calls and assisting customers with various issues.  (Ex. 1 to Muro Aff.)  Soon after

starting her employment, Held submitted medical documentation from her

orthopaedist, dated October 16, 2001, that stated that she had suffered a "spinal

---

[6]If the facts are in dispute, they are stated in a manner most favorable to the non-movant.
See Fitzpatrick, 2 F.3d at 1115.

[7]  Sitel provides telemarketing services for various other companies.  (Muro Aff. ¶ 2.)

cord injury in 1996, which damaged her bladder requiring her to have to urinate frequently." (Held Dep. at 50-51; Ex. 5 to Held Dep.)

Every CSP was entitled to two fifteen-minute breaks a day to use the restroom. (Held Dep. at 75-76.)  To aid Held's frequent needs for restroom breaks, Sitel allowed Held to use a statistical adjustment procedure that ensured that she was not penalized for her additional restroom breaks. (Held Dep. at 56-57.)  Held wrote down the time she went to, and from, the restroom, and these time intervals were deducted from her work time. (Id.)  Held continued to use this procedure and was satisfied until she moved to day shift on January 20, 2003. (Id. at 57, 60-63; Ex. 13 to Held Dep.)

With this transfer to the day shift, Held's position as a CSP remained the same.  Her immediate supervisor was Tiffany Evans, and the floor manager was Bryan Dyess. (Held Dep. at 63-64.)  After her transfer, Sitel initially allowed Held to use the same procedures regarding her restroom breaks that she used on the night shift. (Id. at 64-65.)  Soon thereafter, however, Sitel changed its procedure and required Held to follow the normal procedure of only two fifteen-minute breaks a day. (Id. at 65, 75-76.)

Sometime in early 2003, Sitel asked Held to provide an update on her medical condition. (Id. at 51; 72-73.)  Held submitted a note dated March 31,

7

2003, from Dr. Jenn B. Riser that stated that Held experienced irritable bowel syndrome and the need for "frequent and at times lengthy bathroom visits."  (Id. at 72; Ex. 18 to Held Dep.)

On April 23, 2003, Held was issued a "Second Written Warning."[8]  The warning stated that Held was "observed sleeping on the call floor with [her] phone in outside Line 1.  This is a violation of company policy."  (Ex. 20 to Held Dep.) The warning also stated that Held would "be monitored for further violations" and that "[a]ny additional violations will result in termination."  (Id.)  In her deposition, Held agreed that she "had fallen asleep" on the job.[9]  (Held Dep. at 79.)  Held signed the written warning.  (Id. at 78-79.)

On approximately June 26, 2003, two months after the "Second Written Warning," Held received another disciplinary form that resulted in her termination.  (Ex. 21 to Held Dep.; Held Dep. at 80-82.)  This form stated that "[o]n June 24, 2003, you were observed sleeping on the call floor while a cardholder was on the phone.  This is a violation of the Parachute code of conduct rules 1, 4, 5, 7, 10."  (Ex. 21 to Held Dep.; Held Dep. at 82.)  Because Held could

---

[8]  The "First Written Warning" is not part of the record.

[9]  Held testified that she was taking medication for her disability that made her drowsy. (Held Dep. at 89-90.)

not recall whether she had been sleeping on the job that day, she refused to sign the disciplinary form. (Held Dep. at 82-83.) At her deposition, Held testified that she did not know whether she was sleeping that day or not, but she "did not believe that [she] was." (Id.)

## IV. Applicable Substantive Law and Analysis

The analysis of plaintiff's claims will be determined not only by the nature of the allegations but by the quality of the evidence offered in support of those claims. See Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) (noting that "[t]he analytical framework and burden of production var[y] depending on the method of proof chosen"). In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics. Id.; see Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999). A plaintiff's ability to proceed through the use of circumstantial evidence of discrimination is necessarily important because direct proof of discrimination is uncommon. See Combs v. Plantation Patterns, 106 F.3d 1519, 1537 (11th Cir. 1997); Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987). Here, plaintiff presented only circumstantial evidence of discrimination.

"In evaluating [discrimination] claims supported by circumstantial evidence,

[the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)." Combs, 106 F.3d at 1527.  Under the McDonnell Douglas and Burdine framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally.  See id. at 1527-28.  The methods of presenting a prima facie case, as well as the exact elements of the case, are not fixed; rather they are flexible and depend to a large degree upon the facts of the particular situation.  See, e.g., Nix v. WLCY Radio/Rahall Commc'ns., 738 F.2d 1181, 1185 (11th Cir. 1984).  In general, a plaintiff establishes a prima facie case of disparate treatment employment discrimination by showing that he or she was a qualified member of a protected class and was subjected to an adverse employment action, but that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly.[10]  See McDonnell Douglas, 411 U.S. at 802 (hiring); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (discipline); Nix, 738 F.2d at 1185

---

[10]    See also McDonnell Douglas, 411 U.S. at 802 n.13 ("The facts necessary will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not applicable in every respect in different factual situations.").

(discipline); <u>Pittman v. Hattiesburg Mun. Separate Sch. Dist.</u>, 644 F.2d 1071, 1074 (5th Cir. 1981) (wages).

After the plaintiff has shown a prima facie case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason[11] for its actions. <u>Rojas</u>, 285 F.3d at 1342; <u>Combs</u>, 106 F.3d at 1528. The employer "need not persuade the court that it was actually motivated by the proffered reasons." <u>Burdine</u>, 450 U.S. at 254-55; <u>see</u> <u>Chapman</u>, 229 F.3d at 1024. If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination. Although the prima facie case is irrelevant after the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the prima facie case. <u>See</u> <u>Combs</u>, 106 F.3d at 1528.

Despite this shifting of the burden of production between the plaintiff and the defendant under the <u>McDonnell Douglas</u> and <u>Burdine</u> framework, "[t]he

---

[11] <u>See</u> <u>Chapman</u>, 229 F.3d at 1032 (A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which the employer based its subjective opinion.).

ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253.  Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgement either by proving that intentional discrimination did indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-48 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50 motion);[12] St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Abel v. Dubberly, 210 F.3d 1334, 1339 (11th Cir. 2000); Alexander v. Fulton County, 207 F.3d

---

[12]   The court in Chapman modified the statement in Combs contrary to this holding in Reeves after noting that the standard for granting summary judgment mirrors the standard for judgment as a matter of law.  See Chapman, 229 F.3d at 1025, n.11.

12

1303, 1336 (11th Cir. 2000); <u>Combs</u>, 106 F.3d at 1529-38 (interpreting Hicks and

the post-Hicks case law); <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 920-

21 (11th Cir. 1993).

The only claim remaining in plaintiffs's complaint is that of discrimination

on the basis of disability.   Defendant's motion for summary judgment asserts that

plaintiff has failed to establish a prima face case of disability discrimination

because she did not come forward with evidence from which the trier of fact could

properly conclude that she was disabled.   In the alternative, defendant contends

that, even if she can establish a prima facie case of discrimination, plaintiff failed

to come forward with evidence from which the trier of fact could conclude that the

stated reason for the discharge is pretextual.   Plaintiff contends that she

established a prima facie case and that the defendant's proffered reason is a pretext

for discrimination.[13]

To establish a prima facie case under the ADA, Held must show "that

---

[13] Because the court concludes that a prima facie case of discrimination has not been
established, it will not evaluate the issue of pretext.   The court notes, however, that plaintiff
admits to having fallen asleep in the job the first time and to the warning that an additional
violation would result in her termination.   Plaintiff does not know whether or not she fell asleep
again, and she has offered no evidence contradicting the record incident.   Plaintiff's self-serving
assertion that she "do[es] not believe that [she] was sleeping" does not establish that she was
terminated because of her disability.   <u>See</u> <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1092
(11th Cir. 2004) ("A plaintiff must show not merely that the defendant's employment decisions
were mistaken but that they were in fact motivated by [disability].").

(1)[s]he has a disability, (2)[s]he is a 'qualified individual,' which is to say, able to perform the essential functions of the employment position that [s]he holds or seeks with or without reasonable accommodation, and (3) the defendant unlawfully discriminated against h[er] because of the disability." Reed v. Heil Co., 206 F.3d 1055, 1061 (11th Cir. 2000) (citing Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1226 (11th Cir. 1999)).  The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).  Held does not argue that she satisfies the second or third prong of the definition.  Instead, she relies solely on the assertion that her physical ailments substantially limit a major life activity.

A court generally determines the existence of a disability, under the first definition, by making a three-point assessment of whether: (1) a plaintiff's condition is a physical impairment; (2) the activities that the plaintiff claims are limited by her condition qualify as major life activities under the ADA; and (3) the condition substantially limits the major life activities she identifies.  See Bragdon v. Abbott, 524 U.S. 624, 631 (1998).  Of these three, the second and third are where most analysis lies, and so is the case here.  Held contends that she had two

physical impairments: irritable bowel syndrome and a neurogenetic bladder condition.  Sitel does not argue that these conditions are not physical impairments.  The court assumes that these are physical impairments.

Although the ADA itself does not comprehensively define the meaning of "major life activity," the Eleventh Circuit looks to the regulations that furnish a representative, but not exhaustive, list of functions that should be deemed major life activities for guidance.  See, e.g., Miller v. King, 384 F.3d 1248, 1265 (11th Cir. 2004); Chenoweth v. Hillsborough County, 250 F.3d 1328, 1329 (11th Cir. 2001).  This list includes "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(I).  Also according to the regulations, the term "substantially limits" is defined as follows:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).  The Supreme Court has dictated that these terms be "interpreted strictly to create a demanding standard for qualifying as disabled."  Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002).  "In

determining whether an individual is substantially limited in a major life activity, . . . the following factors should be considered: the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." Id. at 196 (internal quotations and citations omitted). ADA plaintiffs must show that "the extent of the limitation caused by their impairment in terms of their own experience . . . is substantial." Id. at 198 (internal quotations and citations omitted).

In this case, Held claims her impairments substantially affect two major life activities: (1) working and (2) "controlling one's bowels." The court will address each in turn.

### A. Working

It is undisputed that working is a major life activity. "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999); see also 29 C.F.R. § 1630.2(j)(3)(I) (requiring a showing that plaintiff is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having

16

comparable training, skills, and abilities."). A "class of jobs" is defined as: "The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment." 29 C.F.R. § 1630.2(j)(3)(ii)(B). A "broad range of jobs in various classes" is defined as: "The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment." 29 C.F.R. § 1630.2(j)(3)(ii)(C). The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. 29 C.F.R. § 1630.2(j)(3)(I).

Without any citation to the record, Held argues that she is significantly limited in a broad range of jobs because "she was required to sit at her desk virtually all day, which characteristic is the same for many other classes of jobs, such as secretaries, clerks, court reporters, and book editors." (Pl. Br. at 12.) The Eleventh Circuit rejected a similar argument in Swain v. Hillsborough County School Board, 146 F.3d 855 (11th Cir. 1998), where the plaintiff "simply ma[de] the vague assertion that she is unable to perform any job that precludes her from

17

having regular access to a restroom." Id. at 857.  In rejecting this argument the

Eleventh Circuit stated:

> In essence, Swain argues that she has a disability under the ADA
> because she has a physical impairment which precludes her from
> working in any job that a person with her impairment cannot perform.
> Were the Court to accept this tautological reasoning, no physical or
> mental impairment would fall outside the scope of the ADA.
> Although a plaintiff seeking recovery under the ADA is not required
> to provide a comprehensive list of jobs which she cannot perform, the
> person must provide some evidence beyond the mere existence and
> impact of a physical impairment to survive summary judgment.  See
> Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th Cir. 1995);
> Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 727-28 (5th Cir. 1995);
> Bolton v. Scrivner, Inc., 36 F.3d 939, 942-44 (10th Cir. 1994).  Swain
> has offered no evidence that addresses the factors listed in the
> regulations or that otherwise suggests her impairments substantially
> limit her ability to work.  She has thus failed to create a genuine issue
> of material fact as to whether she has a disability under the ADA.

Id.

Much like the plaintiff in Swain, Held has not offered any evidence that she

is significantly limited from working in a broad range of jobs.  Not only does the

record contain no evidence to support Held's argument, but Held's testimony and

employment record belie any claim that she cannot perform a broad range or class

of jobs that individuals of similar skill, ability, and training can perform.  Held's

employment application and attached resume show that since the onset of her

physical impairment in 1996, she has worked for at least two different employers

in three different positions.  Held presented no evidence that her ability to work in

those positions was affected by her impairments.  In sum, Held's proffered

evidence does not create an issue of material fact concerning her inability to

perform a broad class of jobs due to her physical ailments.  The court, therefore,

concludes that Held is not substantially limited in the major life activity of

working as a matter of law.

### B. "Controlling One's Bowels"

Whether "controlling one's bowels" is a major life activity is a question that

the Eleventh Circuit has not addressed.  The Sixth Circuit has expressly held that

controlling one's bowels, or waste elimination, can be a major life activity.

Workman v. Frito-Lay, Inc., 165 F.3d 460, 467 (6th Cir. 1999).  In addition, the

Second Circuit has assumed, without deciding, that kidney failure that limits

removal of waste without dialysis substantially limits the ability to care for one's

self.  Gilbert v. Frank, 949 F.2d 637, 641 (2d Cir. 1991).

Assuming without deciding that "controlling one's bowels" is a major life

activity, Held has failed to show that this activity was substantially limited by her

physical impairments.  The court must make a fact-specific determination in

deciding whether a person is substantially limited in her ability to perform a major

life function.  As explained above, the court must consider three factors in

19

determining whether Held's impairment constitutes a substantial limitation: the nature and severity of the impairment; the duration of the impairment; and the permanent or long-term impact of or resulting from the impairment.  See 29 C.F.R. § 1630.2(j)(2); Toyota, 534 U.S. at 196.

The record is completely devoid of any evidence regarding the severity, duration and impact of Held's impairment.  Held's deposition testimony indicates that she has a spinal cord injury which causes irritable bowel syndrome and that she has a "neurogenetic bladder, which can also cause [her] to loose control of the bladder."  (Held Dep. at 20.)  Nowhere in the record does Held explain her symptoms or how severe they are; how long the conditions will last (or if they are permanent); whether she is in pain and if so the frequency and severity of the pain; or how much control she has over her bowel movements, whether she has ever soiled herself, or how many times a day she must use the bathroom.  The medical evidence states only that she has to "urinate frequently" and that her conditions result in "the need for frequent and at times lengthy bathroom visits."  (Pl. Exs. 8 & 9.)  This evidence is not sufficient to establish that Held's impairments substantially limit her in the major life activity of controlling her bowels.

Because Held is not substantially limited in a major life activity, she is not disabled under the ADA.  As a result, she has failed to establish a prima facie case

20

of discrimination under the ADA.  Summary judgment is due to be granted to Sitel

on Held's claim of disability discrimination.

## V.  CONCLUSION

In summary, the court finds that no material issues of fact remain and that

defendant Sitel Corporation is entitled to judgment as a matter of law as to all

claims asserted by Held.

A separate order will be entered.

**DONE** this the __9th__ day of November, 2005.

_____

SENIOR UNITED STATES DISTRICT JUDGE